UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TERRY LEE GIBBONS,

|                                          |                          |
| ---------------------------------------- | ------------------------ |
| Plaintiff,                               | Case # 18-CV-311-FPG     |
| v.                                       | DECISION AND ORDER       |
| COMMISSIONER OF SOCIAL SECURITY,         |                          |
| Defendant.                               |                          |

## INTRODUCTION

Plaintiff Terry Lee Gibbons brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 14. For the reasons that follow, the Commissioner's motion is DENIED, Gibbons's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings limited to Step Five of the sequential evaluation.

## BACKGROUND

Gibbons has filed multiple applications for DIB over the years. He filed his fifth and present application in July 2010. Tr.[1] 1155. He alleged disability since December 14, 1995 due to several medical conditions, including vision loss, headaches, heart bypass surgery, and back, shoulder, neck, and knee injuries. Tr. 634. His date last insured is December 31, 2001. Tr. 1154. In April 2012, Administrative Law Judge William M. Weir issued a decision dismissing Gibbons's

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 5.

application in part (on the basis of *res judicata*) and denying it in part (on the basis that Gibbons was not disabled). The Appeals Council vacated Judge Weir's decision and remanded for further proceedings. Tr. 377-78.

In December 2013, Judge Weir issued a new decision, again dismissing the application in part and denying it in part. Tr. 20-32. Gibbons appealed the decision to district court. The Commissioner moved to remand the case, conceding that Judge Weir made several errors in his decision. As a result, the district court remanded the case for further proceedings.

On remand, Administrative Law Judge Lynette Gohr (the "ALJ") held a hearing on Gibbons's claim. In May 2017, she issued a decision finding that Gibbons was not disabled from his alleged onset date to the date last insured. The Appeals Council denied Gibbons's request for review. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990)

2

(holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II.    Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the

Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168

F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     The ALJ's Decision

The ALJ analyzed Gibbons's claim for benefits under the process described above. At step

one, the ALJ found that Gibbons had not engaged in substantial gainful activity since the alleged

onset date. Tr. 1158. At step two, the ALJ found that Gibbons four severe impairments:

degenerative disc disease, degenerative knee changes, "mild narrowing at the C5-6 disc space,"

and photophobia in the left eye. *Id.* At step three, the ALJ found that these impairments, alone or

in combination, did not meet or medically equal any Listings impairment. Tr. 1160.

Next, the ALJ determined that Gibbons retains the RFC to perform sedentary work[2] with

additional limitations. Tr. 1161. At step four, the ALJ found that Gibbons could not perform his

past relevant work. Tr. 1171. At step five, the ALJ relied on the testimony of Michele Erbacher,

a vocational expert, to find that Gibbons could adjust to other work that exists in significant

numbers in the national economy given his RFC, age, education, and work experience. Tr. 1171-

72. Erbacher testified that Gibbons could work as an order clerk, callout operator, and addressing

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

clerk.  Tr. 1172.  Accordingly, the ALJ concluded that Gibbons was not disabled through his date

last insured.  *Id.*

## II.    Analysis

Having reviewed Gibbons's motion, and consistent with its responsibility to liberally

construe the pleadings of *pro se* parties, *Randazzo v. Barnhart*, 332 F. Supp. 2d 517, 522 (E.D.N.Y.

2004), the Court reads his motion to raise the following arguments:  First, the ALJ applied the

wrong standard at Step Five of the sequential evaluation process.  *See* Tr. 1158.  Second, the ALJ

violated the law-of-the-case doctrine and the mandate rule.  Third, some of the ALJ's findings

regarding the RFC are erroneous.  Fourth, the ALJ erred in her factfinding at Step Five.  The Court

analyzes each argument in turn.

### a.  Step Five Standard

The ALJ articulated the following standard with respect to Step Five of the sequential

evaluation process:

> At the last step of the sequential evaluation process, I must determine whether the
> claimant is able to do any other work considering his [RFC], age, education, and
> work experience. . . . .  Although the claimant generally continues to have the
> burden of proving disability at this step, a limited burden of going forward with the
> evidence shifts to the [SSA].  In order to support a finding that an individual is not
> disabled at this step, the [SSA] is responsible for providing evidence that
> demonstrates that other work exists in significant numbers in the national economy
> that the claimant can do . . . .

Tr. 1158 (internal citations omitted).  Gibbons argues that the ALJ should have applied an earlier

standard that was in effect at the time of his onset date, rather than the new standard that has been

in effect since he filed his application.  Gibbons's preferred standard is the one adopted in *Curry*

*v. Apfel*, 209 F.3d 117 (2d Cir. 2000).

In *Curry*, the Second Circuit interpreted the SSA's five-step procedure and burden-shifting

framework.  *See Curry*, 209 F.3d at 122.  It interpreted the applicable regulation to require that, at

Step Five, "the full burden to prove disability shifted from the claimant to the ALJ," which required

"the ALJ to prove that the claimant still retains a residual functional capacity to perform alternative

substantial gainful work which exists in the national economy, and therefore prohibited the use

during step five of an inference drawn during step four from the absence of medical evidence."

*Rodriguez v. Astrue*, No. 11 Civ. 7720, 2012 WL 4477244, at *32 n.70 (S.D.N.Y. Sept. 28, 2012)

(internal quotation marks omitted). On August 26, 2003, however, the regulations were amended

to limit the Commissioner's burden to showing "that there is work in the national economy that

the claimant can do"; the Commissioner did not also have to provide "additional evidence of the

claimant's residual functional capacity." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). In

other words, the amended regulations lowered the Commissioner's burden. *See id.* In this case,

the ALJ applied the standard set forth in the amended regulations. *See* Tr. 1158.

Gibbons's argument raises a question that the Second Circuit has yet to answer: whether

the amended regulations apply to applications alleging a disability that arose before August 2003.

*See Poupore*, 566 F.3d at 306. Some district courts in this circuit have reached the issue and

concluded that *Curry*'s standards continue to apply "where the onset of disability predated the

promulgation of [the amended regulation]." *Lupo v. Comm'r of Soc. Sec.*, No. 07-CV-4660, 2011

WL 1316105, at *2 n.2 (E.D.N.Y. Apr. 4, 2011); *see also Jones v. Astrue*, No. 09 Civ. 5577, 2012

WL 4473258, at *4 (S.D.N.Y. Sept. 28, 2012) (collecting cases). As authority for this conclusion,

these cases rely solely on the fact that the Second Circuit's decision in *Poupore*—wherein the court

recognized *Curry*'s abrogation—"limited itself to cases with onsets of disability after August 26,

2003." *Lupo*, 2011 WL 1316105, at *2 n.2. As a result, "*Curry* is still good law for cases with

onsets before that date." *Id.*

The Court is not persuaded by this reasoning, however. Those cases do not analyze, or even acknowledge, that the SSA intended for the new regulation to apply to all cases pending on or after the effective date, "regardless of the date on which an application was filed." *Clarification of Rules Involving Residual Functional Capacity Assessments; Clarification of Use of Vocational Experts and Other Sources at Step 4 of the Sequential Evaluation Process; Incorporation of "Special Profile" Into Regulations*, 68 F.R. 51153, 51159 (Aug. 26, 2003) (stating that the "usual practice" of the SSA is to apply a new rule to "all administrative determinations and decisions made on or after [the rule's] effective date"). As a general matter, courts reviewing Social Security determinations do the same. *See, e.g.*, *Lowry v. Astrue*, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (summary order) (applying regulations in effect at the time "the ALJ adjudicated [the claimant's] disability claim"); *Perez v. Berryhill*, No. 15-CV-1841, 2018 WL 948285, at *3 n.3 (D. Conn. Feb. 20, 2018) (same). Applying that logic here, the amended rule, not *Curry*, governs. *Accord Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 440 n.60 (S.D.N.Y. 2010) (applying amended regulation that abrogated *Curry* where ALJ's decision was after effective date, even though onset date was before amendment).

Moreover, the *Poupore* court itself expressed skepticism that *Curry* would apply under these circumstances, citing two cases in support. *See Poupore*, 566 F.3d at 306. In the first case, *Combs v. Commissioner of Social Security*, 459 F.3d 640 (6th Cir. 2006), the Sixth Circuit held that a regulatory change was not impermissibly retroactive as to claimants who applied for benefits prior to the change. *Combs*, 459 F.3d at 642. The court acknowledged that the Social Security Act "does not generally give the SSA the power to promulgate retroactive regulations," *id.*, but it concluded that amendments do not raise retroactivity concerns even if applied to individuals whose

claims are pending. *Id.* at 646. This is because claimants cannot show "reasonable reliance" or any "settled expectations" with respect to the pre-amendment regulation:

> It can hardly be argued that claimants become obese or otherwise become impaired in reliance on the availability of the presumption in the listing. Nor is there any indication that they file their claims, or decide what to put in their claims, based on how the agency determines whether they meet the statutory requirements for disability eligibility. Similarly, claimants have no settled expectation that the agency will use one as opposed to another algorithm for determining whether the statutory requirements are met.

*Id.* In the second case, *Pine Tree Medical Associates v. Secretary of Health and Human Services*, 127 F.3d 118 (1st Cir. 1997), the First Circuit rejected a similar claim of impermissible retroactivity. *See Pine Tree*, 127 F.3d at 121 (stating that "the mere filing of an application is not the kind of completed transaction in which a party could fairly expect stability of the relevant laws as of the transaction date").

For these reasons, the Court concludes that the ALJ did not apply the wrong standard. Rather, the ALJ properly applied the regulations in effect at the time of decision, notwithstanding that Gibbons's alleged onset date preceded the effective date of those regulations.

**b. Law of the Case and the Mandate Rule**

Gibbons contends that the ALJ violated the law-of-the-case doctrine and the mandate rule. *See* ECF No. 9 at 15-19. "Courts in the Second Circuit have regularly acknowledged that remand instructions to an ALJ from a federal district court in Social Security cases constitute the law of the case." *Bradley v. Colvin*, 110 F. Supp. 3d 429, 441 (E.D.N.Y. 2015). "The law of the case doctrine, while not binding, counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* (internal quotation marks omitted). Consequently, the Commissioner is

"implicitly limited by any findings of the district court regarding the application for disability benefits." *Gladle v. Astrue*, No. 12-CV-284, 2013 WL 4543147, at *3 (N.D.N.Y. Aug. 27, 2013); *see also Calderon v. Astrue*, 683 F. Supp. 2d 273, 276-77 (E.D.N.Y. 2010). Likewise, the mandate rule "presents a specific and more binding variant of the law of the case doctrine," requiring that "on remand, the lower court's actions must be consistent with both the letter *and the spirit* of the higher court's decision." *Krawczyk v. Berryhill*, No. 17-CV-1311, 2019 WL 244491, at *4 (W.D.N.Y. Jan. 17, 2019).

Gibbons asserts that, during his previous district-court appeal, the Commissioner's motion for remand and the district court's remand order definitively resolved most of the issues in the case, including that Gibbons "ha[d] met his burden of proof at Steps 1 through 4." ECF No. 9 at 15. He contends that the only remaining issue was whether the Commissioner could meet the "burden of proof at Step 5 on remand," and he faults the ALJ for reviewing his "entire claim de novo." *Id.* at 15-16.

The Court disagrees. In the motion for remand, the Commissioner conceded that the ALJ erred in his application of *res judicata* as well as his assessments of Gibbons's visual impairment and need for a cane. But the Commissioner did *not* concede that Gibbons was disabled or that he had "met his burden of proof" at any step. To the contrary, the Commissioner argued that the case should not be remanded solely for the calculation of benefits because there was not persuasive proof of disability. The district court remanded the case only to that extent, noting that "the parties agree that . . . the [ALJ's] inappropriate application of *res judicata* [and] the failure to consider Plaintiff's visual impairment[] support remand." Tr. 1249. Because the district court did not expressly or impliedly make any findings on the merits—*e.g.*, whether Gibbons had severe impairments, whether those impairments met the Listings, whether Gibbons had the RFC to

perform sedentary work, etc.—neither the law-of-the-case doctrine nor the mandate rule limited the ALJ to evaluating Gibbons's claim at Step 5.[3]  *See Bradley*, 110 F. Supp. 3d at 441-42 (law-of-the-case doctrine did not apply where district court identified errors with ALJ's RFC analysis but did not "reach a conclusion as to [the] proper RFC").

### c.  Gibbons's RFC

Gibbons appears to argue that the ALJ's RFC finding was erroneous because (1) his treating physician, Eugene Gosy, M.D., consistently opined that he is incapable of even sedentary work; (2) the ALJ declined to consider recent evidence concerning his visual impairment; and (3) the ALJ did not correctly evaluate the functional limitations posed by his visual impairment.  The Court concludes that the ALJ did not err on any of these grounds.

Before reaching these arguments, the Court notes that Gibbons does not challenge much of the ALJ's reasoning with respect to his RFC.  The ALJ concluded that during the relevant period Gibbons was not wholly incapable of work.  She noted that Gibbons's treatment was conservative, consisting of bracing and medication.  Tr. 1168.  Although providers agreed that he could not return to his previous work, they largely found that he "was not totally disabled for all work" and suggested he engage in vocational rehabilitation, which Gibbons failed to do.  *Id.*  The ALJ also rejected Gibbons's claim that his lower-back and neck pain was debilitating in light of the "minimal findings on diagnostic testing."  *Id.*  Finally, the ALJ found that Gibbons's daily activities were inconsistent with his claim that his condition was not only disabling but worsening over time.  *Id.*  For these reasons, the ALJ found that Gibbons could perform sedentary work with

---

[3] Gibbons also asserts that the ALJ's "clarification" of Judge Weir's December 2013 decision was erroneous.  *See* ECF No. 9 at 17; Tr. 1156.  Because any such error appears harmless, the Court need not address that argument.

additional limitations to account for his back, knee, and other medical conditions. Outside of the above-noted arguments, Gibbons does not challenge these findings.

Turning to those arguments, the Court concludes that the ALJ did not err on any of those grounds. First, the ALJ reasonably gave little to no weight to Dr. Gosy's opinions. Under the treating physician rule, the ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). Remand is appropriate if the ALJ does not provide good reasons for rejecting a treating physician's opinion. *Newbury v. Astrue*, 321 F. App'x 16, 17 (2d Cir. 2009) (summary order).

Here, the ALJ provided good reasons for rejecting Dr. Gosy's opinion that Gibbons was incapable of even sedentary work. As to the opinions rendered near the date last insured, the ALJ noted that (1) Dr. Gosy's opinions were inconsistent with the record as a whole, including the opinions of other treating and examining sources; (2) Dr. Gosy's opinions were not supported by his own clinical examination findings; and (3) his opinions were framed in terms of a Worker's Compensation claim. Tr. 1166, 1170. These are all permissible reasons to reject a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c)(3), (4), (6); *see also Jenkins v. Comm'r of Soc. Sec.*, No. 18-CV-6092, 2019 WL 483838, at *4 (W.D.N.Y. Feb. 7, 2019) (stating that an ALJ may properly discount a medical source opinion based on a worker's compensation standard "because workers' compensation claims are governed by different standards than Social Security disability

claims"). As to Dr. Gosy's 2012 medical source statement, the ALJ additionally noted that it was unpersuasive because Dr. Gosy concluded that Gibbons has been disabled since 1988—thirteen years before "Dr. Gosy's treatment of [Gibbons], including some eight years when the claimant was continuing to work." Tr. 1170. The ALJ's evaluation was not erroneous.[4]

Second, the ALJ reasonably declined to consider more recent evidence of Gibbons's visual impairment. The period at issue is between 1995 and 2001, and the recent evidence was from early 2016. *See* Tr. 1167. While evidence postdating the date last insured is not categorically irrelevant, it is "certainly a relevant factor" and the ALJ did not err in discounting it on that basis. *Columbel v. Comm'r of Soc. Sec.*, No. 16-CV-773, 2017 WL 3175599, at *5 (N.D.N.Y. July 26, 2017); *see also Papp v. Comm'r of Soc. Sec.*, No. 05 Civ. 5695, 2006 WL 1000397, at *17 (S.D.N.Y. Apr. 18, 2006).

Third, substantial evidence supports the ALJ's finding that Gibbons could not be subjected to intense lighting and must be permitted to wear tinted glasses because of his left-eye photophobia. There is evidence that Gibbons's left eye was injured in the early 1980s, "resulting in light sensitivity." Tr. 1167. Through the 1990s, medical providers recommended only that Gibbons use photosensitive lenses and avoid bright light. *Id.* And Gibbons continued to work until 1995, including in employment inside with "big light[ing]." *Id.* This evidence is adequate to support the ALJ's conclusion.

---

[4] To the extent that Gibbons also challenges how the ALJ weighed the opinions of Michael T. Grant, M.D.—another of his treating physicians—the Court does not find the ALJ's evaluation erroneous. The ALJ interpreted Dr. Grant's opinions to mean that Gibbons was able to perform "some level of work" despite his knee impairments, and she gave those opinions some weight. That interpretation is reasonable and, as the ALJ noted, consistent with Dr. Grant's examination findings, the conservative treatment he prescribed, and the record as a whole. *See* Tr. 1163-64, 1168-69; 20 C.F.R. § 404.1527(c)(3), (4), (6).

### d. Step Five Factual Findings

Finally, Gibbons argues that the ALJ erred at Step Five because, *inter alia*, Erbacher's testimony related to jobs existing in the national economy at the time of the hearing, as opposed to the period at issue. The Court agrees.

At Step Five, it is the Commissioner's burden to prove that the claimant retains "the necessary [RFC] to perform other substantial gainful work existing in the national economy." *Calabrese v. Astrue*, 358 F. App'x 274, 275 (2d Cir. 2009) (summary order). Importantly, this issue must be analyzed by reference to the work available during the relevant time period—*i.e.*, the date last insured. *See Behling v. Comm'r of Soc. Sec.*, 369 F. App'x 292, 294 (2d Cir. 2010) (summary order) (stating that a claimant must be disabled "as of the date on which [he] was last insured" to receive benefits).

Here, the ALJ concluded that "[t]hrough the date last insured . . . there were jobs that existed in significant numbers in the national economy that [Gibbons] could have performed." Tr. 1171. The ALJ relied on Erbacher's testimony to reach this conclusion. *Id.* But it is unclear whether Erbacher's testimony concerned jobs that existed as of the date last insured—as the ALJ found—or as of the hearing date. At the hearing, the ALJ did not couch her hypotheticals, and Erbacher did not explicitly provide data, in terms of the date last insured. Tr. 1209-13. In fact, Erbacher stated that she needed to "update" the definition for one of the available jobs so that it would be consistent with the "way in which the job is performed in the National Economy *today*." Tr. 1210 (emphasis added). Thus, there appears to be a material discrepancy between the ALJ's decision, insofar as it purports to making findings about the available work as of 2001, and the vocational expert's testimony.

The Commissioner does not challenge this characterization of Erbacher's testimony. Instead, the Commissioner contends that any error is harmless because there is evidence in the record from another vocational expert—who testified as part of one of Gibbons's previous applications—that there were available jobs that Gibbons could perform. *See* ECF No. 14-1 at 29. Given that the ALJ did not reference or cite that testimony in her decision, however, the Court may not rely on it. *See Hall v. Comm'r of Soc. Sec.*, No. 18-CV-6254, 2019 WL 2314622, at *4 (W.D.N.Y. May 31, 2019) ("[T]he Commissioner may not substitute her own rationale when the ALJ failed to provide one.").

Accordingly, the ALJ's finding at Step Five is not supported by substantial evidence, and a remand for further proceedings is appropriate. In doing so, the Court is cognizant of the fact that Gibbons's present application has been pending for over nine years. In light of that long delay and the various errors the SSA made over the years, Gibbons requests that this case be remanded solely for the calculation of benefits. The Court is not persuaded that such relief is warranted. Remand for calculation of benefits is only appropriate "where the record persuasively demonstrates the claimant's disability and there is no reason to conclude that additional evidence might support the Commissioner's position that the claimant is not disabled." *Webb v. Berryhill*, No. 15-CV-971, 2017 WL 1148331, at *4 (W.D.N.Y. Mar. 28, 2017). Delay, by itself, "is an insufficient basis on which to remand for benefits." *Id.* Here, the record does not convincingly establish disability in this case.

Nevertheless, the Court will take steps to ensure that Gibbons's claim is adjudicated on an expedited basis, and it therefore orders the following: First, the ALJ's decision is affirmed except as to the Step Five determination—whether, through Gibbons's date last insured, there were jobs that existed in significant numbers in the national economy that he could have performed—and

the case is remanded *solely* for further proceedings on Step 5. In addressing that narrow issue, the ALJ should ensure that the vocational testimony relates to the relevant time period and should address, to the extent relevant, all other vocational testimony in the record, including any from previous applications. *See Lugo v. Comm'r of Soc. Sec.*, No. 18-CV-807, 2019 WL 4052217, at *7 (E.D. Cal. Aug. 28, 2019) (stating that the ALJ must resolve conflicts in the evidence, including conflicts between vocational experts). Second, the Commissioner shall hold any necessary hearings and issue a decision (at the ALJ level) by January 10, 2020.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED and Gibbons's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, in that this matter is REMANDED to the Commissioner for further administrative proceedings limited to Step Five of the sequential evaluation process, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Commissioner is directed to hold any necessary hearings and issue a decision (at the ALJ level) by January 10, 2020. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 4, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court